IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARCUS SKIPPER,                          §
                                         §
                    Plaintiff,           §
                                         §
V.                                       §            No. 3:23-cv-212-E-BN
                                         §
FEDEX,                                   §
                                         §
                    Defendant.           §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

After United States District Judge Ada Brown referred this lawsuit to the
undersigned United States magistrate judge for pretrial management under 28
U.S.C. § 636(b), *see* Dkt. No. 15, the Court allowed Plaintiff Marcus Skipper until
August 1, 2023 to retain new counsel and therefore deferred its consideration of
Defendant Federal Express Corp. ("FedEx")'s pending motion to dismiss Skipper's
claims under Federal Rule of Civil Procedure 12(b)(6) and stayed FedEx's deadline to
serve a pleading responsive to the complaint pending a ruling on the motion to
dismiss, *see* Dkt. No. 19.

On Skipper's motion, *see* Dkt. No. 21, the Court then extended his deadline to
retain counsel to September 5, 2023, *see* Dkt. No. 22.

After more than one month past that deadline, because counsel had not
appeared for Skipper nor had Skipper otherwise contacted the Court, the Court set
November 9, 2023 as Skipper's deadline to respond to the motion and November 29,
2023 as FedEx's deadline to reply. *See* Dkt. No. 23.

Skipper failed to respond. So FedEx had no reason to reply.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant FedEx's motion to dismiss the complaint and dismiss this lawsuit with prejudice.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But it is plaintiff's "burden … to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL

2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation

controls."' *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev.

Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

Skipper brings claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act as amended (the "ADA") based on gender, race, and disability. *See generally* Dkt. No. 1.

And FedEx argues for dismissal under Rule 12(b)(6) because (1) Skipper failed to exhaust his administrative remedies; (2) Skipper failed to plausibly allege his claims; and (3) Skipper's claims are barred by a contractual limitation period. *See generally* Dkt. No. 13.

### I.    The Court should not dismiss the complaint based on the affirmative defenses advanced by FedEx in its motion.

The undersigned will first address dismissal based on FedEx's two affirmative defenses: limitations and administrative exhaustion.

Limitations based on federal employment statutes is treated as an affirmative defense. *See Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (citing *Adams v. Cedar Hill Indep. Sch. Dist.*, No. 3:13-cv-2598-D, 2014 WL 66488, at *2 (N.D. Tex. Jan. 8, 2014)).

The same treatment should apply to FedEx's argument that, because "Skipper agreed to a six-month limitation period for filing this action but waited almost seven years to do so," Dkt. No. 13 at 1 – accordingly his claims are barred by a contractual limitation period – where, "[t]o determine whether a contractual limitations clause is

enforceable, the district court must decide for each cause of action whether the statute at issue proscribes a contractual limitations clause and whether the limitations cause of action is reasonable under the circumstances," *Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041, 1049 (S.D. Tex. 2019) (citing *Mazurkiewicz v. Clayton Homes*, 971 F. Supp. 2d 682, 686-89 (S.D. Tex. 2013) (holding that, "when these provisions effectively limit a plaintiff's substantive right to recovery or act as a complete bar to relief, they are not reasonable" and "agree[ing] with the majority view of the lopsided split in the federal courts on this issue, and hold[ing] that a six-month limitations period is unenforceable against claims that require an EEOC right-to-sue letter," such as, there, the ADA); *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 441-44 (S.D. Tex. 2015) (distinguishing *Mazurkiewicz* where neither exhaustion nor a statutory limitations period applies to claims under 42 U.S.C. § 1981)).

"To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings." *Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (cleaned up). "Stated another way, the defendant is not entitled to dismissal under [either Rule 12(b)(6) or Federal Rule of Civil Procedure] 12(c) unless the plaintiff has pleaded herself out of court by admitting to all of the elements of the defense." *Clemmer*, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (cleaned up).

Examining the pleadings, the basis for this affirmative defense does not appear on the face of the complaint but is instead presented through documents in the appendix to the motion to dismiss. *Compare* Dkt. No. 1, *with* Dkt. No. 14.

As provided above, it is true that documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim," *Collins*, 224 F.3d at 498-99, and "the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims," *Kaye*, 453 B.R. at 662.

But "documents used to support a defendant's affirmative defense appear not to fall within [this] exception." *In re Northstar Offshore Grp.*, 616 B.R. 695, 710 (Bankr. S.D. Tex. 2020) (quoting *Xtreme Power Plan Trust v. Schindler (In re Xtreme Power Inc.)*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016)); *see also Anderson v. Octapharma Plasma, Inc.*, No. 3:19-cv-2311-D, 2020 WL 7245075, at *7 (N.D. Tex. Dec. 9, 2020) ("[T]he Consent Forms are not 'central' to plaintiffs' negligence claim because they are not 'necessary to establish' any of the essential elements of the claim. In fact, as set out in their motions, defendants rely on these forms solely as a defense to plaintiffs' negligence claim. Accordingly, the court will not consider them in deciding whether to dismiss plaintiffs' negligence claim." (citations and footnotes omitted)); *Douglas v. Bayview Loan Servicing, LLC*, No. CA 11-00495-KD-C, 2012 WL 345364, at *4 (S.D. Ala. Jan. 13, 2012) ("[T]he documents attached to the defendant's motion are not 'central to the plaintiff[s'] claim,' but are, instead, central to the defendant's affirmative defense ..., and therefore, are not covered by this doctrine/exception." (citations omitted)), *rec. adopted*, 2012 WL 345363 (S.D. Ala. Feb. 1, 2012).

So, through the pleadings, Skipper has not pled himself out of court by

admitting to all elements of FedEx's affirmative defense that the Title VII and ADA claims are barred by a contractual limitations period.

And the Court should deny dismissal under Rule 12(b)(6) on this basis. *See Clemmer*, 2015 WL 1757358, at *2 (concluding that, "[b]ecause limitations is an affirmative defense," where the plaintiff had "not pleaded herself out of court" as to that issue, "[i]f the issue is to be resolved in [the defendant's] favor prior to trial, it must be by summary judgment motion").

Indeed, the two Texas federal district court decisions cited in FedEx's brief ruled in FedEx's favor on this argument at summary judgment. *See generally Morgan*, 114 F. Supp. 3d 434; *Barfield*, 351 F. Supp. 3d 1041; *see also Morales v. Fed. Express Corp.*, 610 F. Supp. 3d 317, 324 (D. Mass. 2022) (observing that "[a] variety of courts have found that the six-month limitations period set forth in the FexEx Employment Agreement is reasonable and bars federal employment discrimination claims brought after the expiration of that period" (collecting cases, then granting FedEx's motion for summary judgment)).

FedEx also argues that Skipper failed to exhaust his administrative remedies.

Multiple federal statutes concerning employment discrimination – including the two applicable to Skipper's claims – require administrative exhaustion. *See, e.g., Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019) ("To bring a suit under Title VII, the ADA (disability), or the ADEA (age), a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." (citations omitted)).

The purpose of exhaustion "'is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws.'" *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)). Administrative exhaustion therefore "provides an opportunity for voluntary compliance before a civil action is instituted." *Id.*

But these "charge-filing instruction[s are] not jurisdictional…. [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019).

That is, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis*, 893 F.3d at 307 (citations omitted).

And Skipper does plead that he filed an EEOC charge: "Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission and files this lawsuit within 90 days of the date of receipt of the Right to Sue." Dkt. No. 1, ¶ 6.

But, while Skipper does not attach the charge to the complaint, "the Court may take judicial notice of the charge [attached to a motion to dismiss] 'as a matter of public record'" – "'especially since its authenticity is uncontested.'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 3:22-cv-2685-G-BN, 2023 WL 4687225, at *4 (N.D. Tex. May 31, 2023) (quoting *King v. Life School*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011)), *rec. accepted*, 2023 WL 4686434 (N.D. Tex. July 21, 2023); *see also King*, 809 F. Supp. 2d at 579-80 (taking judicial notice of the charge to address exhaustion raised in a

motion to dismiss); *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 447-48 (W.D. Tex. 2013) (same (collecting cases)); *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." (collecting cases)). *Cf. Boshears v. Polaris Eng'g*, No. 3:22-cv-00053, 2023 WL 2844930, at *3 (S.D. Tex. Mar. 27, 2023) (refusing to take judicial notice of the Charge Detail Inquiry where the parties disputed its application to the timeliness of plaintiff's complaint), *rec. adopted*, 2023 WL 3305165 (S.D. Tex. May 8, 2023).

As to the claims now before the Court that should be considered exhausted by the charge, its "scope … should be construed liberally." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)).

But such a construction must be weighed against the statutory goals of "trigger[ing] the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89.

> To attain a balance between the two, courts in this circuit interpret
>
> "what is properly embraced in review of a [wrongful employment practice] claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton*, 874 F.3d at 443; *accord Jennings v. Towers Watson*, 11 F.4th 335, 342-43 (5th Cir. 2021).

> In support of dismissal based on exhaustion, FedEx argues that the charge
>
> was filed in July 2016. The undisputed date of the termination letter is March 2, 2017, eight months after he filed his charge. Skipper failed to exhaust his administrative remedies as to his termination because he was not terminated until March 2017, some eight months after Skipper Charge was filed.
>
> In addition, the Skipper Charge is deficient in several other ways. First, despite checking the "race" box, the race of the person identified as "Lopez" is not mentioned. It cannot be said the EEOC investigated matters of race discrimination wherein the alleged perpetrator's race is unknown. Further, the identity by race and job title of "they" and "management" are missing from the Skipper Charge. Were they the same race as Skipper? Different race? Again, no facts are included.
>
> Second, the injury and disability, and pertinent information regarding both, are completely absent. Nowhere in either the Skipper Charge, or the Complaint, does Skipper assert facts specifically identifying the disability and resulting limitations, specific terms of the accommodations he sought, and why any options offered as an accommodation were unreasonable.

Dkt. No. 13 at 14-15 (citations and emphasis omitted).

First, the case that FedEx cites in support of its premature-filing argument is no longer good law where it held that "a premature filing constitutes a failure to exhaust administrative remedies and requires dismissal of the complaint for lack of jurisdiction." *Atkins v. Kempthorne*, 353 F. App'x 934, 936 (5th Cir. 2009) (per curiam); *see Davis*, 139 S. Ct. at 1846.

And, while it may be true that a charge filed prior to Skipper's termination may not exhaust a claim based just on the termination itself, "the universe of actionable adverse employment actions" supporting, for example, Title VII liability are no longer limited "to so-called 'ultimate employment decisions,'" such as

termination. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc).

Relatedly, the remainder of FedEx's exhaustion arguments reflect an overly restrictive view as to the scope of an EEOC investigation that "can reasonably be expected to grow out of the charge." *Sanchez*, 431 F.2d at 466. That is, the charge itself need not set out facts to support each element of a prima facie case corresponding to the boxes checked where the facts alleged are enough to logically trigger further investigation based on a checked claim.

That's the case with the charge here. For example, where the charge indicates discrimination based on race and provides that the claimant "was treated worse than similarly situated individuals outside my protected status in that I was forced to do the supervisor[']s duties"; "was forced to wait for everyone else to leave and check all the doors and lock up"; and "was forced to park all the other Carriers['] trucks in the lot," Dkt. No. 14 at 3, the charge need not also indicate the race of the supervisor or management, as FedEx argues, to trigger an investigation based on race discrimination.

## II.    The Court should dismiss the complaint because Skipper's claims are not plausibly pled.

In support of his claims of discrimination and retaliation based on gender, race, and disability, Skipper alleges:

> Plaintiff, an African American male, worked as a carrier for Defendant, FedEx.
> In January 2016, one of Defendant's customers sexually harassed Plaintiff. Following Defendant's policies and procedures, Plaintiff reported the sexual harassment. Defendant removed Plaintiff from the route with the sexual harasser.
> Unfortunately for Plaintiff, Defendant's employee and Plaintiff's supervisor, Mr. Lopez put Plaintiff right back on same route with the

sexual harasser where the sexual harassment continued.

From that point in January 2016 when Plaintiff engaged in protected activity by opposing sexual harassment, Defendant (specifically Lopez) began to retaliate against Plaintiff. Defendant treated Plaintiff less favorably than similarly situated co-workers and peers outside of Plaintiff's protected class. Defendant forced Plaintiff to perform supervisor's duties that were not in Plaintiff's job description. For example, Defendant forced Plaintiff to stay late and lock up, wait for everyone else to return, and park all the other carrier trucks in the lot.

On May 20, 2016, Plaintiff was injured on the job.

Plaintiff returned to work with restrictions and request for accommodations. Defendant wholly failed to properly engage in good faith interactive process regarding the accommodation request. Defendant's employee and Plaintiff's supervisor, Mr. Lopez, wholly disregard Plaintiff's request for accommodations and restrictions.

Defendant's failure regarding Plaintiff's accommodation request caused Plaintiff to be injured again.

On May 26, 2016, Defendant, via Mr. Lopez informed Plaintiff, without engaging in the good faith interactive process, told Plaintiff there was no where to put him. This was not true.

Defendant sent Plaintiff home and terminated him the next day on May 27, 2016.

Dkt. No. 1, ¶¶ 7-15.

To plausibly allege – and ultimately prove – his claims, Skipper must either rely on direct evidence or proceed under a burden-shifting analysis.

"[D]irect evidence is rare" and has been defined by the Fifth Circuit "as evidence which, if believed, proves the fact without inference or presumption." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (cleaned up). For example, "[a] statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination." *Id.* (cleaned up).

Insofar as Skipper's allegations reflect a lack of direct evidence, the first step in the burden-shifting analysis requires that a plaintiff articulate a prima facie case

as to each cause of action.

A plaintiff need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).

A district court may therefore rely on the prima facie elements "to frame [its] inquiry" at the pleading stage. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (*Raj* "does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 n.1 (5th Cir. 2017) ("Although not a pleading standard, this court has looked to the 'evidentiary framework' set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a plaintiff pleads discriminatory intent." (cleaned up)).

So, at this stage, the Court must ask whether Skipper has pled enough facts, accepted as true, to plausibly allege each employment-based claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). And, if he "has not pled such facts," it is "proper[ to] dismiss" that claim. *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether

the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

Starting with Skipper's Title VII claims for gender and race discrimination and retaliation, the prima facie elements for a claim of discrimination are that a plaintiff

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citation omitted).

And, "[i]n the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

As to a discrimination claim's fourth required element – that the plaintiff was treated less favorably than other similarly situated employees outside his protected group – all Skipper alleges is that FedEx treated him "less favorably than similarly situated co-workers and peers outside of [his] protected class" by "forc[ing him] to perform supervisor's duties that were not in [his] job description." Dkt. No. 1, ¶ 10.

These facts fall short of those required to plausibly allege this element, under which "an employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially

comparable violation histories.'" *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

Turning to retaliation's first required element, "[a]n employee engages in protected activity when she opposes an unlawful employment practice." *Landry v. Leesville Rehab. Hosp., L.L.C.*, No. 21-30423, 2022 WL 358168, at *6 (5th Cir. Feb. 7, 2022) (per curiam) (citing 42 U.S.C. § 2000e-3(a)).

"Sexual harassment is a form of illegal employment discrimination," which "under Title VII generally falls into two categories: (1) a 'quid pro quo' claim and (2) allegations that a supervisor's sexual harassment created a 'hostile work environment.'" *Landry v. Leesville Rehab. Hosp., L.L.C.*, No. 2:19-CV-00465, 2021 WL 2604835, at *2 (W.D. La. June 24, 2021) (citing *Cherry v. Shaw Coastal*, 668 F.3d 182, 188 (5th Cir. 2012); *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000)), *aff'd*, 2022 WL 358168 (5th Cir. Feb. 7, 2022).

But the hostile work environment need not always be created by a supervisor. Sexual harassment by a customer can also constitute an unlawful employment practice for which an employer may be held liable. *See Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019) ("[N]onemployees can be the source of the harassment. Customers are one example of third-party harassers." (citing 29 C.F.R. § 1604.11(e) ("An employer may ... be responsible for the acts of nonemployees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and

fails to take immediate and appropriate corrective action."); citations omitted)).

Where a customer is the alleged sexual harasser, the prima facie elements of the hostile work environment claim are: "(1) that [plaintiff] belongs to a protected class; (2) she suffered unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action." *Landry*, 2022 WL 358168, at *2 (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)).

But Skipper need not establish a prima facie case as this claim to allege that he engaged in protected activity when he reported the alleged harassment to FedEx. Instead, "it is enough that [he] shows [he] '*reasonably believed* the employment practice to be unlawful.'" *Id.* at *6 (quoting *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016); emphasis by *Landry*).

Even so, Skipper has not alleged factual content to allow the Court to infer a reasonable belief that the alleged harassment could constitute an unlawful employment practice because it was severe enough to affect a term, condition, or privilege of his employment where Skipper merely alleges that he reported to FedEx that its "customers sexually harassed" him. The Court needs more facts to make this determination and find that Skipper engaged in protected activity such that he has plausibly alleged a retaliation claim. *See, e.g.*, *id.* at *6 (distinguishing the facts there from those in *Rite Way Serv.*, 819 F.3d at 238, 243-44, and *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), and concluding that, "[w]hile neither an

investigation nor harassment coming from a supervisor are necessary to establish reasonable belief in retaliation claims, both are indicia that an employee's belief was likely reasonable").

The undersigned turns finally to Skipper's claims under the ADA.

"Under § 12112(a) of the ADA, an employer is generally prohibited from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting 42 U.S.C. § 12112(a)).

To plead a plausible claim of ADA discrimination, a plaintiff must provide facts to support "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

And "[t]he ADA Amendments Act of 2008 … provides, among other things, that the term 'substantially limits' is to be interpreted as broadly as possible.'" *Milteer v. Navarro Cnty., Tex.*, 652 F. Supp. 3d 754, 763 (N.D. Tex. 2023) (quoting 42 U.S.C. § 12102(4)(A)-(B)); *see also Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 478-81 (5th Cir. 2023).

Even so, Skipper fails "to adequately allege a disability under the ADA" by "plead[ing] facts giving rise to an inference that [any alleged, yet, here, unidentified,] impairment 'substantially limits one or more "major life activities."'" *Luedecke v. Tenet Healthcare Corp.*, No. 3:14-cv-1582-B, 2015 WL 58733, at *5 (N.D. Tex. Jan. 5, 2015) (quoting *Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011)).

To the extent that Skipper also makes a failure-to-accommodate claim under the ADA, the statute

> requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, a plaintiff "must show that (1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."

*Mueck*, 75 F.4th at 485 (citation omitted).

And Skipper's failure to allege his disability under the ADA also prevents the Court from finding that this claim is plausibly pled.

The ADA also "prohibits an employer from 'discriminating against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." *Lyons*,

964 F.3d at 303-04 (cleaned up). And the ultimate elements of an unlawful retaliation claim under the ADA are "that: (1) [the plaintiff] engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Id.* at 304 (footnote omitted).

Like Skipper's Title VII retaliation claim, as to a claim of retaliation under the ADA, his failure to adequately allege a disability under the ADA prevents the Court from finding the reasonable belief required to allege that Skipper opposed an employment practice that is unlawful under the ADA.

### Leave to Amend

While Skipper failed to respond to the motion to dismiss, the opportunity to object to these findings, conclusions, and recommendation (further explained below) allows him a chance to cure the deficiencies identified above and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant Skipper leave to amend. *See Scott*, 16 F.4th at 1209 ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

### Recommendation

The Court should grant Defendant Federal Express Corp.'s motion to dismiss

the complaint [Dkt. No. 12] to the extent that Plaintiff Marcus Skipper has failed to state a claim on which relief may be granted and dismiss this lawsuit with prejudice unless Skipper demonstrates a basis to allow leave to amend through his timely objections to these findings, conclusions, and recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 8, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE